All right, Mr. Kotke, whenever you're ready. Thank you, Rob. My name is Robert Kotke. I'm counsel for appellant Reya Liberto. Ms. Liberto is present. She's the third from the right in the middle row. During the six weeks she was employed as a waitress at the Clarion Hotel. She was never disciplined, but she had an intolerable problem with the night restaurant manager, Trudy Clubb. Two days in a row, Ms. Clubb called her a porch monkey and threatened to get her fired. On the first of these occasions, she got so far up in her face, she sprayed her with saliva. And on the second, she addressed her as little girl. Now, by any standard, that is deeply offensive. And in a dictionary sense, it's severe because it's extreme, it's harsh, it's insufferable. And really, in a Harris v. Forklift sense, it's severe because it altered the terms and conditions of employment. The Clarion had an employee handbook, and the employee handbook, of course, had an EEO policy, which is reproduced at page 330 of your joint appendix. And the EEO policy recited that the Clarion would not tolerate any unwelcome comments about employees based upon their race or skin color, and it required an employee who witnessed or overheard such conduct to report it immediately to HR, and it absolutely prohibited any form of retaliation. But when Ms. Liberto was abused in this fashion two days in a row, it would have made it clear to anybody in her shoes who had average intelligence that a condition of her employment at the Clarion was going to be putting up with that sort of nonsense. Now, interestingly, the district court didn't really find that this conduct wasn't severe. The district court didn't really find that it wasn't bad enough to meet the applicable standard. Instead, the district court found that it wasn't pervasive, that it didn't happen often enough to meet the applicable standard. But the applicable standard isn't severe and pervasive. It's severe or pervasive. So if the conduct is severe, you don't get the pervasive. And in this case, Ms. Clubb's conduct towards an employee was severe because it altered the conditions of employment, and it exemplified an unlawful employment practice. Now, the statute, the opposition clause of the anti-retaliation provisions of Title VII, affords protection to an employee who opposes, quote, an unlawful employment practice, unquote. Well, a practice is something that you do, and then you continue doing it, and you do it the same way. Now, the practice as a whole may well be unlawful, but that doesn't mean that every iteration of the practice, every act that conforms to or exemplifies the practice is individually unlawful. I'll take, for example, the practice of intimidating employees with racist invective. Now, that's an unlawful employment practice. But some people would say that not every application of that is individually liable. But you ought to be able to complain early before these actions reach a critical mass, before they become fully formed unlawful harassment, because the Supreme Court has told us several times that Title VII is prophylactic, that its purpose is preventive, that it is designed to nip these kinds of shenanigans in the bud before they reach a level where they are actually fully formed racial harassment. If we agree with you that the conduct... I'm over here. Over here. Thanks. I was having a little trouble following your voice, Your Honor. I appreciate that. Okay. If we agree with you that the conduct in this case was sufficiently severe, what is the evidence of record that it should be imputable to the employer, or does the case need to go back for findings on that point? Well, that's an issue that pertains only to the racial harassment claim. But I would submit that, on the record, it's indisputable that Ms. Club was a manager. She self-described herself as the night restaurant manager at the Horizons Restaurant. And her little write-up... Well, her self-description wouldn't be enough, I would think. Perhaps not, but there's more. Her deposition testimony was to the effect that she had overall oversight for the restaurant, all its activities. The incident, at least the first incident, occurred at the restaurant at night. She's the night restaurant manager. The write-up, which she received, which appears... But it's true that the district court made no findings with respect to that? That's correct, Your Honor. All right. So shouldn't we allow the district court to figure that out in person? I would say not, because I would say, on the record, Your Honor, it's indisputable that she was a manager. But if the court disagrees with me, then the answer is yes, that this is a factual issue upon which findings are necessary as to the harassment claim. But that issue doesn't have any relevance to the retaliation claim. Now, the retaliation claim, I would submit, is a more obviously available claim to the plaintiff. And certainly, at a minimum, the retaliation claim should have gone forward. But you're pursuing both? Yes, Your Honor. Still? Yes, ma'am. Okay. Why don't you just give up the first one and just focus on the second? Well, some tacticians would agree with Your Honor's suggestion. I'm not saying that's my view, but I'm going to ask you why strategy would. Because it's wrong. The person's wrong, too, you say? Right. So you want both of them sent back? Yes, Your Honor. That is correct. And my reason is that it is insufferable to be addressed with an appropriate racist epithet in the workplace. But she wasn't her supervisor. She was not her director. It was another guy. I mean, it was a guy. It was her supervisor. Right. What was... Richard Hubeck. Hubeck was the supervisor. Correct. He didn't want to set it. It was a co-worker who set it. Well, Ms. Club, respectfully, wasn't a co-worker. She was a 20-year manager. In the retaliation, after she reported it, then the boss man got into it and fired her. Right. So there's no question you got the company into it then. I agree. But on the first one, you got the co-worker calling her a girl and a porch monkey twice. Right. But I respectfully disagree with the characterization of Ms. Club as a co-worker. She was a 20-year veteran manager at the Clarion. My client was a... Well, that's all true, but that wasn't all there was in the record. Her write-up described her as, quote, a member of our food and beverage management team, unquote. And she was described by virtually everybody who was deposed as a manager of longstanding. So respectfully, I would characterize her as a manager. And I think, in response to Your Honor's question and Judge Diaz's question, that the answer is that, on the record, she was indisputably a manager and not a mere co-worker. But if the court disagrees, then that issue is to be resolved on remand by the district court as to the racial harassment claim. It has no relevance to the... Well, the district courts can't make findings in summary judgment cases. They have to take the facts. Well, what I meant, the district... The light most favorable to the non-moving party. They don't make findings. I agree. I mean, so the district court, we can't send it back and have you make a finding. Well, that is actually something I would agree with, Your Honor. It is an issue for the jury. It is a factually... Well, unless the district court found as a matter of law that there was no basis to impute the conduct to the employer. And I suppose I may have misspoken. The issue of severity is also, if we agree with you, it essentially is a jury question at that point. Right. Well, it might be. But it might also be true as a matter of laws. I'm suggesting that she was a manager. We wouldn't be able to find that here. You didn't move for summary judgment below. That's true. That is correct. But the district court put it on remand. So, at a minimum, the retaliation claim should have gone forward because it was objectively reasonable to believe that Ms. Liberto was being subjected to unlawful sexual harassment. But the district court on the retaliation claim was simply adhering to the precedent, Jordan. It said it was. Well, that's right. He followed Jordan. The district judge followed Jordan. Right. Which was the circuit precedent. He was obliged to do that. He was. But I believe Jordan was clearly distinguishable, Your Honor, for three reasons. First, in Jordan, the plaintiff was not the target of the racial abuse. The plaintiff was a mere onlooker. In this case, Ms. Liberto was the target of the racist abuse. But weren't the statements in Jordan worse than these? It's a matter of opinion, Your Honor. I mean, there's a lot. My opinion is that. Your opinion. Thank you. My opinion is they were not worse. Not worse. No, in my opinion and the opinion of a number of courts that have considered the question, being likened to a jungle animal is appropriate in the highest degree. It is. That was in Jordan. Right. That's the reason I'm asking, weren't they worse? Well, actually, they were not worse because they were applied to the D.C. snipers who were appearing on TV. You're talking about somebody else and not the person. Right. You made that distinction. Right. But the statement in and of itself. Well. Well, can't you also make the distinction that it happened on one occasion rather than two successive days? That's certainly a point of difference. It certainly is, Your Honor. I mean, Jordan really was a single incident case. A big point of difference is here it was referenced directly to the person's job. Correct, Your Honor. And there it was talking about a television news report. It's miles apart from Jordan. I agree, Your Honor. The three distinctions that I think are critical are that, number one, in Jordan the abuse was directed at the D.C. snipers on TV and not against the plaintiff. Counsel, now you're, just so I'm sure, you're now making the argument that the district judge simply misapplied the Jordan standard. I think the district court misapplied the Jordan standard. I think the problem, you had initially indicated, I think, in response to Judge King that, and I was curious about this also, that Jordan was controlling. Well, Jordan is the most recent case I'm aware of in which this court has considered this issue. Are you saying that we can reach the result you advocate for without overruling Jordan? I am saying that, Your Honor, because as we've established through… Is that appropriate? Is the Jordan correct? I don't think… As a matter of law? I don't think it's correct. But I think that if you stick to Jordan, the plaintiff still wins. Well, what is correct as a matter of law? Let's try that. Thank you, Your Honor. I think, as I've argued in my supplemental brief, and as my colleague, Mr. Ramshaw, has argued on behalf of the EEOC, that the correct standard is what has come to be called the if-continued standard. And I support that in the statute because the statute protects an employee who reports or opposes a practice, not a discrete event. And the question for the court in a case such as this one should be, if this conduct were continued, would it exemplify an unlawful employment practice? And I think everybody would agree that at some point, even if you don't think this is severe, at some point it's going to become pervasive. It's going to exemplify an unlawful employment practice because we can all agree… It's going to or it could. It's going to, if repeated long enough, Your Honor. What are we talking about now? Are we talking about the facts of this case or are we talking about Jordan? Well, I'm talking about a standard which, in my view, would control these cases going forward. I think that the Jordan standard, Your Honor, if applied in this case, still produces victory for the plaintiff. Because I think as we've established, the Jordan case is readily distinguishable from this one. But in my opinion, respectfully, the Jordan standard unduly burdens employees because it requires the employee to figure out, well, is there a plan afoot? Is it likely that this conduct is going to be continued? And… Yes, ma'am. Jordan arguably blends the analysis of possible work environment in retaliation. Do you agree with that proposition? I think so, Your Honor. Okay. In the opinion that you would write to this court, then, would you distinguish the analysis of possible work environment in terms of the elements and the retaliation elements? Or how would you treat it differently from how it was treated in Florida? I would begin with the observation that the conduct imputed to Ms. Clubb is severe. And, therefore, there are allegations… I'm sorry, and I don't mean to interrupt. Certainly. But maybe I wasn't clear enough. How would you define the elements of a possible work environment claim or the elements of primary case of proof as opposed to the elements of retaliation? Or would you blend them in your analysis? I would go about it by defining the elements of a racial harassment work-based claim, which are that the harassing actions must be severe or pervasive, such as will alter the terms and conditions of employment. And if the plaintiff establishes a prima facie racial harassment claim, then obviously reporting that claim is protected conduct. But let's say the plaintiff falls short, either on severity or pervasiveness. But it has to be both. That's your position, anyway. No, it has to be one or the other. The district court's position, I believe, was it had to be both because the district court found that it wasn't pervasive. Okay. I don't want to interrupt you. Go ahead. No, I'm glad you did because I want to be clear on this point. I think it's disjunctive. It's either severity or pervasive. If it's severe, you don't get to pervasive. To follow on John Keenan's question for just a second, following the standards, why would we conflate the merits of a racially hostile environment with the retaliation claim? Because the anti-retaliation claim, would you think you would have whether there's a reasonable belief in a racially hostile environment? Whereas on the merits, the question is whether there is a racially hostile environment. So on the retaliation point, you could have a reasonable belief. Right. And yet it might turn out that it's not. I agree. So aren't they two distinct inquiries? Yes, Your Honor. They are, and I completely agree that I should not conflate them. The correct analysis is to begin with the racial harassment claim. If plaintiff has established a prima facie case, then obviously his complaint is protected. But you're right, if he hasn't, that doesn't end the analysis on the retaliation claim. Because if the plaintiff has a- The retaliation claim is an easier bar to clear. It is. I agree. And you have a better argument on that here than you do on the hostile work environment. I would agree. Because with all due respect, I think it is manifestly reasonable. And why do you think you have a better argument? Well, and that goes to the sense of Judge Keenan's question and I think Judge Diaz's question in the sense of- or Judge Keenan, I suppose, Judge Diaz, but how do you rectify going forward with Jordan? Shouldn't we clear up now that we're all together in bank what Jordan is missing? He must be missing something because that's why we're here in bank in a sense. Don't you think we ought to clean that up in terms of clearly one severe incident is enough? That would be a home run out of the state for me, Your Honor. My strong conviction is that in this case, the conduct towards my client was severe in a legal sense, in every sense, that the racial harassment claim was fully formed and should have gone forward. What if it had only been one porch monkey comment? Right. A single. You have two of them here. Right. And you got a reference to a girl. Right. And the other things you mentioned, but it's only one. Yes, sir. Now, I think that's- tell us that. Would that be enough or not enough? In my opinion, it's enough because I agree completely with Judge- You've got all the support data, but your opinion doesn't count much unless there's some law behind it. I know. Do you have a Supreme Court precedent or somewhere that binds us on it? Well, I'll say two things. Number one, Judge Kavanaugh, I thought- Judge Kavanaugh is not in this circuit, and he was writing in dissent, wasn't he? Concurrence. Concurrence. It's like a separate opinion. Right. But he's not in this circuit, so that doesn't bind us. But the Supreme Court is- Supreme Court. What about Supreme Court? They've said repeatedly that an isolated incident- But we'll tell Judge Kavanaugh you think highly of him. That's right. Touche. I have heard many, many, many quotations from the Supreme Court, many of them from my colleague, Ms. Coberman, to the effect that ordinarily an isolated episode of racial abuse doesn't cut it unless it is extremely severe. Unless it's extremely serious. Okay, serious. Serious was the language the Supreme Court used. I think you're right, sir. Unless supremely serious. That's extremely serious. Yes. Excuse me. Doesn't that tell us that in some case an isolated incident is enough? That's precisely the point I was working for. Yes, sir. Except it's extremely serious. So if it's extremely serious, they are enough. Yes, ma'am. I just wasn't clear on your answer to my friend Judge Kavanaugh's question, and I understand that you think that the straight-up discrimination claim is different than the retaliation claim. They have different elements. And I think I understand what you'd require for the straight-up claim. What would you require for the retaliation claim? Well, an objectively reasonable belief that discrimination was underway, that actions had happened which, if continued, would form an unlawful employment practice. That's what I wasn't clear about because it seems to me that if continued language is not consistent with what you and I have just established as Supreme Court law, that a single instance can count as straight-up racial discrimination. So if you have that single instance that establishes racial discrimination, straight-up claim, and the person goes and complains about that instance, do they have a retaliation to end their fire? Do they have a retaliation claim? If there's only one, even though it hasn't been continued? If it meets the severity test, in which case it is. We've hypothesized here that it does. It's that peculiar single instance that is extremely serious. Right. If it does, you don't get into the objectively reasonable test. Let me ask this. Do you see a distinction here between retaliation for claim discrete action, unlawful employment activity, and hostile environment? Because the Supreme Court has said one can be enough. It seems to me that might be the easier case when whatever that person does, the employer does, everybody would agree. Good gosh. That is discrimination. But a hostile work environment seems to be, well, it is different, and it kind of develops. Is that the distinction you would draw? Ordinarily, it kind of develops. But in this case, it was an explosion. I'm not asking you to lobby for your facts in this case. I'm just asking about the legal principle. Right. As everybody has acknowledged today, the case in which an episode of racist abuse is serious enough to support a racial harassment claim by itself is an unusual case. But the Supreme Court has allowed, I think, that to happen. Right. A single incident is not enough, I'm paraphrasing, unless it's severe enough. But what if you have a hostile work environment where the single incident is not considered hostile enough? Right. So you have to have some allowance for a hostile work environment claim. Isn't that correct? It is. And in Jordan, the applicable standard, this court said, was it has to be apparently severe or pervasive or at least enough to support an objectively reasonable belief that there's a plan afoot to establish unlawful harassment or that the harassing actions are likely to continue. Could I please ask, I'm very sorry, I didn't understand your response to Judge Motz's question. Oh. It seems to me that we agreed some time ago that the bar for clearing a harassment claim. Yes, Your Honor. Do we not? So why is this objectively reasonable standard that you are maintaining as appropriate in the hostile environment context still the same bar that you are imposing in the retaliation context? I thought we had said that it need only be a reasonable belief, even if it turns out not to be substantiated. That is correct. I would agree with that. And the difficulty arises in cases where there's conduct, which everybody agrees at some point will meet the pervasive prong of, you know, racial harassment. But doesn't at that moment. Right, but doesn't at that moment. Exactly. But in the case where it does at that moment. You don't even get to this analysis. You only get there if it doesn't. If you have a retaliation claim. I mean, if you make it, if there is retaliation, you have a retaliation claim. That is correct. Your Honor, I note that I've heavily borrowed against my rebuttal time. Would the Court prefer that I sit down and yield to my colleague? Let's hear it from Mr. Ramshaw. That's very kind of you. Thank you, Your Honor. Good morning, Your Honors. I'm Paul Ramshaw for the EEOC. Judge Keenan, let me try to start with your question. I think the only change we would like in the Jordan rule is that the retaliation claim should be protected if he or she complains about conduct racially offensive or sexually offensive conduct that, if repeated, would create a hostile environment. It would be repeated down the road somewhere. Yes. Or repeated before the complaint is made to the employer. If repeated when? If it has been repeated or if it will be repeated? After the complaint. After the complaint. That's what I'm concerned with your sticking those words in there. If repeated often enough, you put it in your brief, your amicus brief, because that seems to run contrary to what the Supreme Court said earlier when they said that isolated incidents could be enough if they're serious enough. I'm sorry if that... I agree with what Judge Mott said and what I think you're suggesting, that, yes, single instances, a single instance of the serious enough, like a supervisor calling someone the N-word. Isolated incidents, unless extremely serious, will not amount to a hostile work environment. Do you agree with that? Yes. So an isolated incident could be enough? An isolated instance... If it's serious enough, it could be enough. Yes. If you call somebody the N-word and say, I'm going to tell them they're a no-good, lazy N-word, is that enough? Isolated incident. Courts will disagree on that. I think it can be. Well, let me put it this way. You represent the EEOC, the United States of America, and you put it in your brief, if repeated often enough. Does it have to be repeated every hour or every day or every week? Or is once enough to justify reporting it and getting a retaliation claim? If the incident by itself creates a hostile environment, then you don't... then you're free to complain about it and you're clearly protected because you don't even have to go to the reasonable belief test. So if you're retaliated, if it's severe enough, you have both a straight-up claim and you're fired, you're retaliated against because you've complained about it. You also have a retaliation claim. You don't have to have this reasonable belief that it's going to be repeated again. Right. Is that correct? Yes. Yes. But your standard, if I understand yours correctly, you believe your standard offers more protection for the worker, don't you? Yes. Because it's not necessary. So when an incident occurs, that could either establish, that could be severe enough in and of itself to create a claim or certainly a claim for retaliation. But your, if repeated, aren't... I take it that's aimed at an incident which on its face may not appear to be enough to establish a claim. But if you were to let it go, it would establish a hostile work environment. Isn't that your standard? Yes. Yes, that's correct. And that, I think that follows from the prophylactic scheme that the Supreme Court set up in Farragher and Ehlers because it... Could you have a case where, as a matter of law, there was not an unlawful employment practice, but you could still have a surviving retaliation claim for complaining about that practice? Yes. Yes, I think they're not hooked together that way. The two distinctions I would make to show that is, one, the court's ruling on the sufficiency of the evidence for the hostile environment claim has to be based only on admissible evidence. And the plaintiff would not be limited to admissible evidence informing the objective or reasonable belief. And two, I think it's the difference in the standards. What makes the difference in the standard reasonably believed? Because... No, I'm asking what words in the standard makes it different? Well, we are suggesting that Jordan be changed. No, but what I'm saying when we look at it, when we look at the statutes in the case law, something is outlawed if it's an unlawful employment practice. But yet, you just said you could fail that and still have a retaliation claim for reasonably believing what occurred was an unfair employment practice, unlawful employment practice, correct? I'm asking what makes the difference. Is it the reasonably believed language? The reasonable belief should give leeway beyond the actual hostile environment claim. I'm just asking, does anything else give leeway? Well, the standard we're proposing would, yes. That we believe that the employee should be protected if she complains about offensive conduct that is not enough to create the hostile work environment. What about a discreet act? Let me ask you that. What would be your analysis under discreet act? If, in fact, as a matter of law, that discreet act, not hostile work environment, discreet act as a matter of law does not amount to discrimination. Could there still be a reasonable belief under your view that there was protection from retaliation? Yes, because we believe the standard should be not that the plaintiff needs to believe, reasonable belief that there is a hostile work environment, actionable violation. But I'm not saying it's not based on hostile work environment claim. It's a discreet act claim. You know, they just said, I don't say it's going to continue, but what they did, I don't think it's going to continue, but what they did is enough that one time. You think that could make out, under what circumstances, you think that could make out a substantive claim, don't you? Yes, yes. Could it make out a retaliation claim? Yes. It could because why? A person could reasonably believe that act could, in and of itself, could create a claim when as a matter of law it can't? I'm sorry. I thought you were talking about a single incident that as a matter of law was not. As a matter of law was a hostile environment. No, no. I think a claim by an employee. I believe that single act was enough for discrimination. And when I complained about it, I was fired. That's a retaliation claim. If the court were to decide in looking at that case, no, you're wrong as a matter of law, that single act is not enough for a discrimination claim. Not a hostile work environment claim is not enough for your discreet act claim. Would the person still be protected? Did the person have a reasonable belief of what the law was, even if it turns out the law was not that? This court asked what rule should we use in figuring out what conduct is protected. And we're suggesting that the rule be if it's offensive, if it was not trivial or moderately offensive conduct. It's it's it's significantly offensive conduct that if repeated could create a hostile environment. What's the limiting principle with that? I'm over here again. I'm sorry. Thank you. Because it seems to me virtually any offensive conduct if repeated could at some point rise to that level. The limiting principle, there's there's several. If if the conduct is trivial or only mildly offensive, then it would not then it would not meet our test. For example, if if, you know, some coworker says, oh, your hair looks nice today or, you know, how are your kids doing? Or if the conduct is. Well, no, I'm saying it's not. But but that in certain if that happens, if if one winds up talking about the children extensively during an interview, that might be a problem. Mr. Ramshaw, what if you had the breeding case? You remember that the Grand Canyon case? What if that comment or comments like that were repeated with the application of your test to those facts require a different result than the Supreme Court reach? If again, reasonable in my mind, they would. But I think I think our our test. Well, is that test in your mind? Are you now stating the EOC's position in response to Chief Judge Traxler's question? Are you stating the EOC's position? The EOC doesn't was unhappy with how Breeden came out. It hasn't taken an official position of whether that that would satisfy this rule. I think Breeden is just another question about the EEOC's position. Do we have your views on the underlying case or the underlying violation question in this case? No, we we do not take position on them. Does the EEOC have views on that question? Yes, we I could. I could supply. I could supply a letter brief on that. Yes, the commission's compliance manual. I'm giving us the bottom line right now. A little preview of coming attraction. Let's see if we can guess what the answer is going to be. I mean, seriously, can you tell us the bottom line right now? And then you can submit a brief. That the single that the single incident with with two incidents with that severely offensive language can create a hostile environment. Yes. Is that correct? Is that what you think? I mean, I just want your views. Yes. Yes. What if it's only one? What if it was only one porch monkey? The circumstances here. Yes, I understand. And I'm going to have to know the other things that were happening. Was the person also threatening your job at the same time? It was said by a co-worker. And it's clear co-worker with no close influence on the employer. Probably not. But if it's said by the boss. Yes. One's enough. Yes. All right. This question of one's enough enough for what? I mean, are you saying that a single incident would be enough for a reasonable belief? Probably because you want complaints to come early and probably also because the employee has to be given some leeway and employees aren't lawyers. They can't really figure out what's a hostile environment and what's not. So you would have a single incident if it's very serious, would supply a reasonable belief for purposes of protection against retaliation. But at the same time, it would not necessarily suffice to establish an actual racially hostile environment. And there are reasons for differentiating between the two. And as I say, an employee, an employee has to be given a little bit leeway in complaining to bring it to the attention of the employer. And because you can't expect to diagnose the ultimate outcome of the racially hostile environment claim on the merits. So what may be enough for one isn't necessarily enough for another. Wouldn't you agree? Yes, I agree, Your Honor. That's not what I understood them to be asking. But I definitely agree with what you said that that and I think it's implicit and fairer than others that that an employee that in order for the prophylactic, in order to avoid harm. Title seven's goal, we want employees to complain about offensive conduct before it becomes. What concerns me is that they might be conflated when there are all kinds of reasons to keep them distinct. And, you know, we've just been over some of them, but I think Judge Keenan asked the appropriate question right at the at the outset. These are different inquiries. Retaliation and the stand up and the stand up claim are ultimate racially hostile environment. Yes, I agree, Your Honor. I'm not sure I understood your answer to the chief judge's question. Could you give it again? You want me to repeat the question? I would appreciate it. We were talking about the Breeden case, Clark County versus Breeden and the Grand Canyon comment. My question is, if we applied the test you advocate to those facts, presuming that that they could be repeated, that they might be repeated, perhaps in different context, but over a period of time, would you that would the application of your test to those facts require a different result in that case than the one the Supreme Court reached? In the EEOC's mind, yes. But people can disagree. That makes me nervous to overrule the Supreme Court. So I want to add that people can disagree about that. I think the Supreme Court may well have the people who wrote that opinion may well have believed that that was so inoffensive that even if it were repeated fairly frequently, it would not cause hostile environment. She was just doing her job. Their comments were not sexually based. So I guess your answer is that you think that we could adopt your standard with an eye toward how the Supreme Court would regard certain words, certain conduct. Yes. And we would have to do that indeed. Yes. And that reason has to be balanced with Farragher and Ehlers and White and Crawford. Because in White and Crawford, the reasoning was we need to eliminate harm. Therefore, we need employees to feel free to complain and report harassing conduct. And they won't do that if they fear retaliation. Okay. Thank you. Thank you. Let's hear from Ms. Zuberman. Good morning.  The Supreme Court's decision in Clark County v. Breeden set the minimum threshold for protected activity under the opposition clause of Title VII retaliation provision. Under Breeden, a plaintiff must establish that she had an objectively reasonable belief that the conduct about which she complained was an unlawful employment practice under Title VII. Breeden further instructed that in determining the objective reasonableness of the plaintiff's belief, the court is to apply the established substantive law to the challenged conduct. Now, indeed, the plain language of the statutes of Title VII's opposition clause, which protects only complaints about a practice that is made an unlawful employment practice under Title VII, and not complaints about any offensive conduct that concerns a protected characteristic such as race, requires that no lesser standard be applied. Significantly here. So you would disagree with what Judge Wilkinson just said, that the standards are different?  Indeed. The standard for looking at the conduct complained of, the court is to apply the same standard, okay, in the sense of did the conduct or did the conduct complained of constitute a hostile work environment? Now, and then to do that for the hostile work environment, you go through the substantive law of the Supreme Court regarding what constitutes a hostile work environment. You apply that same substantive law, which is precisely what the court did in Breeden. You apply the same substantive law with respect to hostile work environment in the retaliation case. The only difference is in a hostile work environment claim, the plaintiff has to prove that the hostile work environment actually existed. In the retaliation claim, the plaintiff has to establish that she had an objectively reasonable belief that the hostile work environment existed. The key word in that standard is the word objectively, and that doesn't mean that you can look at the most sensitive plaintiff or a subjective belief. It has to be an objectively reasonable belief, but under the fact here, wouldn't, as just a matter of an objective reasonable person standard, wouldn't an objectively reasonable person upon hearing these epithets hurled at her by maybe not her own supervisor, but another person. Using the most degrading possible language, screaming face-to-face, doing it twice on successive days, probably in front of others to hear. Why wouldn't that be not just a subjective, sensitive, oversensitive thing? Why wouldn't almost anybody say this is intolerable, and why wouldn't they complain about it? And that's what I'm saying is, you know, that seems to me an objectively reasonable belief. If those comments were directed at me or something comparable, heck yes, I would complain, and I think I would have a reasonable basis for doing so. And that's what I can't really understand about your position, is why it was objectively unreasonable for this individual to complain about the degrading and abusive language which was directed at her on several occasions face-to-face with a supervisory official screaming at practically the top of her lungs. Okay. Your Honor, first, in terms of facts, and in terms of the supervisory issue. You have to take them in the light most favorable to the plaintiff here. That's correct, and apply the law. And in 2013, the Supreme Court decided the case of Vance v. Ball State and established what a supervisor is. And Ms. Clubb, based on the undisputed facts in this case, was not a supervisor. She had no authority over the plaintiff. She couldn't affect the terms or conditions of her employment. She was the one that was calling the plaintiff to account for going through the kitchen. She probably had some authority over the arrangements for the service that evening. Well, but she's not a supervisor under the law, under Title VII law. It's that simple. And plaintiff, Ms. Libertad, she doesn't disagree with that. She, in fact, said in her deposition that she didn't view Ms. Clubb as a supervisor. She didn't direct her in any way. She didn't take authority. She said, my supervisor was Jamie. So that's number one. Number two, under the Supreme Court's decision in Breeden, the court said that you have to look at the substantive law of hostile work environment. But this is not a lawyer here. She can't, I mean, this is the other thing. If you can't complain about this, what could you complain about? She's not a lawyer. And you say, well, we have to look at the law and everything. But the employee who is complaining is not an attorney. So you can't have the, I'm just not sure you can have the same standard. Well, I understand that, Your Honor. But the Supreme Court in Breeden said, yes, you do. And, in fact, what the Supreme Court said in Breeden, this is in the decision because Ms. Breeden wasn't a lawyer. And, in fact, the Ninth Circuit in Breeden said the same thing that you're saying here. She's not a lawyer. And we believe that a reasonable person looking at the facts of the case, you know, looking at the conduct that occurred, would believe or could believe, mistakenly, but could believe that this creates a hostile work environment. But you have one additional fact here. Over here. You have one additional fact here. Because the speaker in this case to the employee also says, in so many words, I'm a good friend of the boss, and I'm going to get you fired. And she is fired. Doesn't that substantively change the panoply that Judge Wilkinson gave you? She doesn't say that she's a good friend of the boss. She just says, you know, they're arguing, and she says, you're going to regret it. And as she's leaving, she says, she says, porch monkey. But going back to – Excuse me. Doesn't she say, or at least doesn't she allege saying that she was going to go to Dr. Berger and was going to teach Ms. Liberto a lesson? Yes. She said that in one interview. Isn't that not a relatively – is that an innocuous comment in your view? It's two coworkers arguing, and one of them says – and it's a heated argument. There's no dispute. And one of them says, I'm going to go tell the boss. An argument that was initiated by Ms. Shub. Correct? Yes. Okay. So you're saying that – I'm sorry. Right here. So you're saying then that one has to be a formally designated supervisor in order for liability to incur to the employer as opposed to one exercising de facto supervisory authority. Tell me about the distinction you're drawing there. In other words, does she have to appear on the management chart? Is this your position that she has to appear on the management chart in order to be exercising supervisory authority so as to have her remarks imputed to the employer for purposes of a claim? Under the Supreme Court decision in advance, she has to have the actual authority to be able to have an impact, a tangible impact on an employee's terms and conditions of employment. Right. And what about this record suggests that she does not have sufficient authority to have a tangible impact on this employee's conditions of employment? Because the record indicates that what she did, she worked three nights a week. And what she did was essentially make sure that the dining room, everything was set in the dining room. She acted as the hostess in the dining room. And she filled in and helped other employees where they were needed. No authority to hire, fire, discipline. Okay. What about the circumstantial evidence in this case? Do we have to turn a blind eye to the fact that the evidence is that she's a friend of the boss, she said you're going to get in trouble, and that this employee was fired? Isn't that valid evidence? Actually, frankly, in the record, it's not in the joint appendix, but in the record of the case, that was disputed, that she was a friend of the boss, the boss, the owner. Dr. Berger says she's not my friend. She's just worked there a long time and not my friend. We have to take the facts that are most favorable to her, not to you. Well, yeah, but on undisputed facts. Nothing to dispute. Nothing to dispute. Counselor, just one more factual question. Am I remembering right that in the second incident, Ms. Liberto was in a meeting with someone else, and then Ms. Clubb comes in and says, I'm more important. Come talk to me. That's what Ms. Liberto says. Right. Okay, and we have to take that? Yes. Yeah, okay. Doesn't that sort of indicate that Ms. Clubb has some authority here, if she can pull people out of meetings they're already in? I don't think that necessarily indicates that she says she wants to talk, and Ms. Liberto left. But Ms. Liberto's own statement, which was in her deposition, is I never considered Ms. Clubb my boss. Never considered her. She was my coworker. That's what Ms. Liberto says, and I think that's the best indication, number one. But there's nothing in the case law, Ms. Cooperman, is there, that says it has to be her boss as opposed to a supervisor or someone acting in the capacity of the supervisor so as to be imputable to the owner. But the facts don't establish that Ms. Clubb was. She wasn't anyone's supervisor. Exactly, but you keep saying she wasn't her supervisor. You're not contending that you have to be someone's direct supervisor for liability to incur. No, not necessarily. Okay. And so the key is that in the Breeding case, the court made it clear you have to apply the substantive law, and it talked about the substantive law. And the language that the court used, I think, is critical. Clerk v. Breeding has an important role, and that is you don't confer anti-retaliation protections over ambiguous incidents and for super-sensitive plaintiffs. And that's important because it can go way too far, and everybody can use a complaint mechanism as a way to set up a lawsuit and to immunize themselves, for example, against what they think is a forthcoming demotion or a forthcoming dismissal. And they can go and complain about just anything, or they can just be super-sensitive. But that doesn't appear to be this case. I mean, so often the facts drive things. I mean, do we have any indication that she is complaining because she wants to give herself some added protection against some impending adverse employment action or that she's somehow super-sensitive? I mean, this is – Clerk v. Breeding has a large scope in preventing this from getting out of hand. But on the other hand, you know, what would it say if we said, no, you can't complain about something like this? Well, Your Honor, first of all, in Clerk v. Breeding, I think it does extend to this. The court said you have to apply the substantive law. And in discussing the substantive law, the court says that, you know, a single, you know, or isolated instances, racial epithets alone aren't going to do it. That's not sufficient. That's what the court quotes. What do you mean? A sufficiently severe single racial epithet. The Supreme Court has now said that won't do it? Yes, the Supreme Court has said that time and time again. I beg your pardon. They said except a single incident usually won't do it unless it's sufficiently severe. Right. And the court has indicated that. Okay. So we agree. That's what they've said time and time again. Right. Not that a single incident will never do it. That's correct. But when a court looks at a single incident, the single – I don't know any case where the court has said that a single incident of a – But how much is the employee, just some working person, charged with knowing the nuances we're talking about right here? Okay. The Supreme Court – as I understand your standard, as I understand what you're saying, you think the retaliation claim and standard says unless the person reasonably believes. You don't reasonably believe. You think it's added by case law or something like that. But at any rate, you would incorporate what the law is on unlawful employment practice, correct? That's correct. But if you were to do that, isn't Judge Mott's correct that the law on that is that one incident may be enough? That's correct. One incident may be enough. But there – So then why wouldn't the employee win? Because one incident of what I will call offensive verbal language is not – Racially offensive. Racially offensive. Racially offensive is okay. Racially offensive verbal language is not sufficient. There's no case – But the Supreme Court says if you were to say to the employee, listen, you're wrong. You don't know. You're not a lawyer. You don't know anything about the law. And she just happened to say, well, I've got this Supreme Court case braiding. And it says right there, one is usually not enough. I'm paraphrasing. In parentheses, unless extremely serious. Why wouldn't the average layperson go, I believe, and I think anybody would believe, calling somebody what I was calling this case is enough. Why wouldn't that person be protected on the retaliation claim? Well, because again, it has to be judged according to the substantive law. So in other words, then you would say that's fine, but I am general counsel to the corporation. You're not a lawyer, and I know you think you read those words. But if you'd studied this for years like I'd have, you know the general trend is one word won't do it. We've come to that. You think that's the state of the law? The law is that you have to apply the substantive law. You could be mistaken in the law. You think that's where we are, my hypothetical. You think that's the law. A person could point this to this language from the Supreme Court to their balls and say, well, you retaliated against me. I think it's pretty doggone severe. I don't like being called that. And the Supreme Court, I think if I read those words right, that one time could be enough, I think. No, I don't think. I don't think that's what – you have to look at the totality of the substantive law. All right. Let me ask you this then. How do you then square that with the law that if an employee has a complaint and doesn't complain about it, they may well lose that as evidence of discrimination? Right. I think that squares actually – the two coincide. And that's, you know, the standard in Farragher and Ellworth. Number one, I want to say that the same argument was made in Breeden. Do you think that coincides for the protection of the worker? Yes. It coincides. I think it strikes the proper balance. And what you have here, if you look at this court's decision, the Navy Federal Credit, this court said that, you know, the employee doesn't have to establish that the hostile work environment existed or doesn't have to have an objectively reasonable belief that the hostile environment already has been created. But if a plan is set in motion, if the facts are such that it shows continuous activity that it's likely to ripen into a hostile work environment, the employee can complain. That's what Farragher and Ellworth require. Farragher and Ellworth do not say that the employee has to report at the first instance. What those cases say is that the employee cannot unreasonably sit back and allow – So who's at risk in that case then for not reporting? If you are on the side of not reporting, is that ever going to inherit to the detriment of the employer? Or is it always going to, if it hurts anybody, hurt the employee? If you don't say, well, you don't have to do it the first time, you've got to think about it. But who benefits from waiting? Not the employee. It may not help the employee, but the employee won't benefit from it, will she? Well, it may be a one-time incident, a brief incident. That's not repeated. It's over. Heat of the hearing. Heat of an argument. How many porch monkeys are enough? You say one is not enough. You say in this particular case on this evidence that two are not enough. Would three be enough on three consecutive days? It's going to depend on the totality of the circumstances. Well, would three be enough? If you had another one another day in this case, three, would that be enough? If the conduct repeated itself over and over again so as to affect the conditions of employment, not just be offensive but to affect the conditions, and that's what the Supreme Court said in Harris v. Forklift and repeated again in Farragher v. Ellerith and repeated again in Breeding. If you have that, then it may be enough. But you need that to continue. Well, hold on. The Supreme Court said that that's one of the factors you consider. It's not you don't there are a number of circumstances, factual circumstances, and that's one of them. Why isn't this just a jury question as to how much is enough? Because it's to be decided, the court held it's to be decided under the substance of law. It's a question of law as to under the law, is there an objectively reasonable belief? And you apply the substance of law. To point out to this court, for example, where we're talking about how much conduct or what would be it, in this court's decision in Skipper v. Giant Food, that in that case, there was the supervisor made a racial slur, and the evidence was that over a period of time, there were 13 or so racial slurs made by coworkers. There was racial graffiti in the workplace. But the court held that that didn't constitute a hostile work environment. Perhaps today we're here to correct that. We sit here together perhaps to consider that. Counsel, you cite Breeding as the reason substantively that this comment as a matter of law and Supreme Court precedent. Text without context is pretext. In Breeding, it wasn't a situation where the plaintiff, I'm not excusing this at all, but the situation was the plaintiff was a part of a team reviewing job applicant reports, psychological reports. And in those reports, none of which were created by any of her fellow employees or supervisors, was there, and they read from it a very offensive account of that person saying something that was horrible about a female. They read it aloud, and they looked at her, and one said, I don't know what that means. The other one said, I'll tell you later. Like, that's between us boys. I'll tell you later. Offensive. But you're saying that that's likened to this case where they directly said you're a porch monkey, which may even, nigger is an offensive term, but here you're saying you're less than a human. You're some animal that runs around a jungle, and you're not even a human being, and you're saying that you say Breeding is foreclosing this court from saying that that is serious enough to be one incident. I want you to address that. Okay. And what I'm saying is that Breeding established the standard, the scrutiny, what the court is to look at in determining whether the employee had an objectively reasonable belief. But in that case, they said the sensibilities was you're complaining about something that wasn't said about you. It was in a report that they had to look at. The offense at best was they read it aloud and looked at her. They didn't create that. That's what the court was saying. You're taking that out of context. This case is a direct offensive comment to that employee and then telling her, I'm going to talk to the supervisor and get you fired. How in the world can you compare that to Breeding's facts? Well, what I'm saying is that Breeding set the standard and set the scrutiny. And the standard is that you apply the substantive law. So when you apply the substantive law, the court has said time and time again isolated instances won't count. A racial epithet. Isolated unless they're serious. No. Now, wait a minute. Unless they are serious. And in terms of the seriousness, what the court points to, extremely seriousness, and those cases. So you're saying it's not extreme. I'm saying that, yeah, under the jurisdiction. You don't think of being called a push monkey in your job and being told, I'm going to get you fired is extreme. Answer that question. I think, no, it's not extreme under the court's hostile work environment cases. Is it extreme so that. Fight the case. Well, the court repeatedly, it was in Harris v. Forkless, racial epithets don't create isolated racial epithets don't create a hostile work environment. That was repeated. I'm sorry, over here on the Harris-Forkless thing. Right. If we accept for a moment that there might be some context in which an isolated racial slur would not create a hostile work environment, some kind of platonic ideal of how you could do that. I mean, that doesn't look like this case. Right. From someone who thinks she has enough authority to yank her out of meetings she's having with other people. It's combined with at least a very strong implicit threat of further repercussions. When you put that all together, is there a case like that where the court has said that's not enough? You have to, again, I'm saying you look at the coworker case. She's not a supervisor. You look at the coworker, even a supervisor case. You have a coworker case that looks like that where a court has said that's not enough. I'm sorry. Is there a coworker case with facts like this comparable to this where a court has said that's not enough? Wait a minute. Ms. Kupferman, don't interrupt Judge Harris, please. Let her finish what she wants to say and then you can answer the question. I looked at Skipper and there was sort of, it was over many, many years and there were, the allegations were vague, who saw what, who heard what. But a case like this where there's one plaintiff saying this is what happened to me, I'm just asking what's the best authority? Facts that look like this where a court has said that not only is that not enough for the underlying violation, it's not enough to create an objectively reasonable belief that there has been a violation. What's the best case? Actually, the cases just all hold that. I just can't think of one off the top of my head, but they all hold that coworker racially offensive. There's been, frankly, there's been numerous cases of that. And you need a lot more. And that's, again, coworker supervises even a higher standard. And there are instances where there's supervisory conduct, where they're using highly offensive racial terms directly to the employee. And the courts are saying, you know, if they're isolated, if it's not continuing. Ms. Kupferman, over here. Ms. Kupferman, let's get back to your assessment that this wasn't a sufficiently severe racial epithet. Standing here in front of the court opining, I'm concerned that you haven't left anything for the trier of fact to determine. You're saying in every instance, this is a determination made for the court sitting in assessment on summary judgment. What, from your perspective, is left for the trier of fact in this analysis? And the follow-up question is, isn't the assessment of the severity of a racial epithet to some degree necessarily a question of fact for the trier of fact? And, again, what I'm saying is that under the case law, there – and an appellant doesn't even cite a case. Under the case law, there is not a case where a court has held that – Your discourse is suggesting that this is something always that the judge sitting on the bench decides the severity of, and that can't be the case. There has to be a function for the trier of fact in this analysis. And so I'm asking you, from your perspective, what is that function? And it's – the function for the trier of fact would be if the question of law, frankly, can't be resolved. I mean, that's where it is. If the question of law leaves open the question of whether the conduct was objectively reasonable. But here, applying the established law, the belief was not objectively reasonable. Again, based on the law, and I should also say based on the plain language of the opposition clause. Ms. Zuperman, I keep calling this woman Ms. Chubb. Does your analysis require – in order to – if we disagree with you on the question of whether Ms. Clubb functioned in some sort of oversight capacity, do you lose? Do we have to agree with you on that point in order for you to prevail? I don't believe that I lose because, again, the limited – the facts being limited to two, these two offensive comments, which were really done over – it was a part of the continuing argument that these two were engaged in in probably a 15-hour period. I will submit, though, that the standard, as we know, the standard for coworker harassment, what needs to be shown is, you know, much higher what you'd have to show for coworker harassment than supervisory harassment. But again, you know, the undisputed facts in the case are that Ms. Clubb did – she doesn't amount to advanced supervisor. I mean, that's pretty clear. Excuse me. I was just going to say I thought we had also agreed that a supervisor doesn't necessarily have to be designated as such in an organizational chart. And perhaps that would be one of those – the extent to which Ms. Clubb exercised oversight here might be one of those questions of fact that Judge Keenan referred to to be determined. I don't think so because it's not just – it's not just exercising oversight. It's actually having authority to materially affect the terms and conditions of appointment. Well, what about Ms. Clubb apparently reminding Ms. Liberto that Dr. Berger would listen to anything she said? Well, that doesn't indicate supervisory authority. That's – that's – It certainly suggests the ability to affect terms and conditions, doesn't it? I don't think under the – under the standard in Vance, that's a statement by a coworker to another coworker that, you know, the boss is going to listen to me. I don't think – I don't think that goes with that at all. And in the face – and the record evidence is that she didn't have that authority. In fact, in Vance's decision, what the Supreme Court says is we're limiting the number of supervisors that clearly are supervisors. And here, we're talking about a hotel that employs less than 200 people. And you had Ms. Clubb, who reported to the food and beverage director, Mr. Hubeck, who reported to the general manager, who then reported to Dr. Berger. So, you know, I think, you know, it's pretty clear under the Vance decision that she just didn't have – You would agree that the facts here are dramatically different from those in Jordan, wouldn't you? I – Where it was perfectly clear that there was no supervisory authority. I mean, in here, we have a – we have a question as to whether she's supervisory, as to whether it's her supervisor, and the whole management structure. And that may be one for the prior fact. I agree with you there can be questions of law as to severity and objectively reasonable belief that would go off on summary judgment. But there seem to be some factual disputes here, a number of them. But at a minimum, isn't this a – isn't this a very different case from Jordan? Because in Jordan, I don't think there – it was a single incident. And I don't think this whole matter of supervisory authority that we were talking about was actually brought into question in the way that it has been here. Well, again, the plaintiff – the supervisory authority is kind of after the fact argument that the plaintiff is making on appeal. I'm asking you, isn't this really very, very different from what we confronted in Jordan? Well, not from the supervisory standpoint and not from the – actually, the language in Jordan. It was a more racially charged tirade in the Jordan case with – this was – the only racial comment here was the porch monkey comment. Jordan went on and on. There is a difference between this case in Jordan, and that's that the comment was directed to the employee. Isn't that pretty significant? I think it's a significant difference. I don't think – significant from the fact it's to the plaintiff as opposed to the TV. I don't think from the – again, from the case law under what constitutes a hostile work environment that it gets there. And that's what the court – that's what the Supreme Court repeatedly, repeatedly has said. Is your standard – doesn't your standard readout reasonably believe in the retaliation? Why doesn't it? Because you – as I understand you, the standard for what is an unlawful employment practice is substantively decided. It is or it isn't. But a person has to understand for their reasonable belief what that law is. So couldn't you take the term for all intent and purposes, take the phrase objectively, reasonably believe out, and you would get the same results all the time? Because the person who complained about it, if they have to know it, then they are complaining about what the law says is an unlawful employment practice, doesn't it? Well, no, because under objectively reasonable, you are – the employee is closed with the knowledge of the substantive law. That's what's applied. That's what Breeden said. And frankly, that's what I think the language of the opposition court said. However, there's leeway in that. That can be mistaken. And it doesn't have to – Mistaken as to what? Their understanding of the law? Their understanding of the law. But it can't when – but it still has to be with – How much contrary dicta or holding does a layperson have to know to create that reasonable doubt? Well, they need to know that isolated offensive epitaphs in the workplace does not create a hostile work environment. And again, what the language of the opposition clause says – Your Honor, I see my time is up. Go ahead. What the language of the opposition clause says is that it protects opposition or complaints about practices that are made an unlawful employment practice under the statute. Offensive racial epitaphs in themselves, isolated offensive conduct in itself is not an unlawful employment practice under Title VII. Unlawful employment practice, which is a defined term in Section 2 and Section 3 of Title VII, are terminating – you know, firing, refusal to hire, affecting compensation. And then – Let me ask you a question before we leave. This is a very difficult case to deal with in terms of the type of language used here. And it puts us in a position in determining summary judgment. What is a matter of law do the facts establish? I mean, you can talk about law in terms of the standard reasonably objective, but really you're saying is it enough? And there is something that has to be important here to say ultimately maybe a jury should deal with it. But let me ask this question. Insofar as Jordan, do we inescapably have to confront that decision in terms of this narrow interpretation of reasonable belief? In my opinion? Yes. In contrary to what the appellant and the EEOC say, Jordan did not establish the standard. I think Jordan applied the standard of the Supreme Court in Breedon. That's our point. Jordan follows Breedon exactly and says you have to apply the substantive law. This is the substantive law in hostile environment. And in applying the substantive law, the court can determine as a matter of law whether the... But in any event, you're saying we need to address it. If there's that much disagreement, we ought to at least say it from your perspective what it means or point out that it's different. But Jordan needs to be confronted. I think Jordan is fine the way it is. From your interpretation, but there's an interpretation that has a different view than what you presented, and we need to confront that decision. At least to say what you just said, no more than just to affirm it from your perspective or to do something different. You agree with that, don't you? I would submit that if the court wants to. I think Jordan is good law. But if the court deems the need to confront it, I think it's good law. And I think it's because it's based on both the Supreme Court... Well, the court often will take the opportunity to confront issues that need to be confronted, particularly in an en banc proceeding. And this is a question, is this something that needs to be confronted? And it appears to me, at least in terms of the disagreement expressed here, it needs to be dealt with and clarified. You agree? I mean, I think that is why we're here, frankly. Particularly because I know the issue of Jordan has been an issue that there's been a lot of discussion among the judges. And so I believe the court does want to address it. We would submit that the court, in addressing that decision, should continue to follow what the court held in Jordan. And as I said, I think the court applied what the Supreme Court, the way to scrutinize, analyze these cases, that the Supreme Court established in the Breeding case. Any other questions for Ms. Cooperman? Okay, thank you, Ms. Cooperman. Let's hear from Mr. Cockey in response. In our confrontation with Jordan, though, I think we have to acknowledge that the facts of this case are dramatically different from both Jordan and Breeding. Breeding, I would agree completely with. So are you then saying, in answer to Judge Wynn's question, you don't think we have to confront Jordan? We don't have to confront Jordan in the sense of deciding whether or not to uphold or reverse Jordan. Because this case is factually distinguishable. Then in what sense do we have to confront it? Well, if you take the position that it is the controlling law here. If you apply that law to this case, because of the dramatic differences in the facts in this case from those in Jordan, you get different results. But the answer is you don't think we have to confront it because you think we can decide this case the way you would have decided under Jordan. Right. And as I understand, what I'll call judicial restraint. But I thought I understood that was not your idea of where the law was. You think we could square this case with the law as it's set forth in Jordan, but I thought your position was that that was an incorrect statement of the law. Well, my – it's the most recent articulation by this – Believe me, we all understand that. And I'm asking you, you're an advocate. We still have a hard time answering your question today. But I have thought that you had proposed a different approach. Am I incorrect? I have proposed a different approach. You're right. Which you regard, I assume, is more consistent with controlling law. It is. It is less burdensome to the employees. And that's the effect. But just because it's less burdensome to the employee doesn't mean it's more consistent with controlling law. What we're trying to do is to put ourselves where the Supreme Court is. Right. But it is consistent with the wording of the applicable statute and the prophylactic interpretation of that statute the Supreme Court has given. And for the reasons that emerged in Judge Gregory's colloquy with Ms. Kupferman, Bredin was a very different case factually. It really did involve an ambiguous incident with an arguably super sensitive plaintiff. Because in that case – So what is the limiting principle of law in your view that just doesn't throw open any complaint to the point that it confers anti-retaliation protection? Do you have some kind of guidance as to giving employees sufficient leeway to complain about deeply offensive acts on the one hand and not just permitting any insubstantial or ambiguous or frivolous complaint from conferring unnecessary protections on the other? Well, I mean, obviously there's a balance that has to be struck and a line that has to be walked. I agree. What's the limiting principle in your judgment? Well, the Supreme Court has said many times that we're not enforcing a code of civility, that we're not protecting thin skins and people who are offended by mere discourtesy. But what is striking in this case and in other cases is the racially offensive nature of the conduct, which in my view and I think in the view of many judges is severe in the sense that it exemplifies very offensively an unlawful employment practice. And that is not mere discourtesy or incivility. It is intolerable racial invective, which a self-respecting person would not put up with unless they desperately needed their job. And I think that is the limiting principle. I think that to be clear, hopefully more clear than I was before, that although I think that Jordan can be readily distinguished factually from this case, and I think if you apply the laws that was formulated in Jordan to this case, the plaintiff still wins. But I do not feel that the formulation of the law in Jordan is correct because, A, it unduly burdens the plaintiff in these circumstances, which the Supreme Court has said we should not do because we're trying to encourage early detection. Well, that's the part about it that sort of I find sort of interesting from your perspective. You argue as though you're before a three-judge panel. You would get up and argue the law is not correct, but my facts are so distinguishable from it that I win. You have an opportunity that says the law is not correct, and it should be done this way before the panel. It just seems like it takes away the purpose of us being here. If you're going to get up here and try to distinguish what you think fundamentally is bad law, but you're not going to forcefully move to say court, because that's a service to everybody to deal with law and to make the law good. But for you to take that position, it's like, well, you're powerless. You're bound by the precedent of this court on that case, so I must only say the facts. That's not your position today. And what we would benefit from would be you giving us the benefit of, yes, maybe an alternative if you choose to go with this law. These are the facts. But really, this is the situation. That's what we ask you. That's what I think would be helpful. Well, my answer would be that Mr. Ramshaw is correct, that if the incident complained of isn't sufficiently severe to be fully formed racial harassment, that unusual case allowed for by the Supreme Court, then the question becomes, okay, if repeated, would it become severe or pervasive, such as would exemplify an unlawful employment practice and alter the terms and conditions of employment? That, in my view, is a formulation of the standard which serves the public purpose. It also serves the underlying purpose that the Supreme Court has perceived in Title VII. And it is a preventive application of the law, which takes into account the fact, as emerged from, I think, Judge Shedd's observations, that these folks are not law professors. The people who are making these calls in the trenches, they are workers who have to decide, well, do I complain and serve my self-respect, or do I keep my mouth shut because I'm afraid of getting fired? And the Supreme Court has said that you kind of lean towards protection because we're encouraging early reporting. We're encouraging people to report these abuses before they become fully formed unlawful harassment. And the best standard to achieve that outcome is the so-called, if continued, standard because it lightens the burden for the plaintiff, but not in a way that encourages, you know, super sensitive plaintiffs to complain of ambiguous incidents. Isn't your position here today as a lawyer, you would love to hit a home run. Right. But you'll take a double as long as it gets your run home. Well said, Your Honor. I don't represent, I pretty much appreciate the support. You would like the home run if you could get it. I would. Because that gives you a run home and gives you other things. But you want to get the run home. You've stolen my thunder. You understand we're talking about a home run in the first instance. You're right. Then you go for the other. I'm happy to have the support of the United States, but I represent an out-of-work waitress. I don't mean that disrespectfully. Do you understand that we are not bound by Jordan today? I do, sir. We're cut adrift from Jordan by assembling in this courtroom. I understand that and I respectfully request that you use this opportunity to enact a newer, better standard for plaintiffs. Why don't you sponsor the same one that the United States does? Is that what you're saying? Yes, Your Honor, it is. Well, I am delighted to answer any further questions, hopefully forthrightly. I believe we're done. Hearing none, I thank you for your time. Thank you. Neglected to welcome Judge Parrish to our court after this baptism by fire. I'll do it anyway and tell you how glad we are to have you join us. We'll come down and greet counsel and then we'll adjourn to discuss this case.
judges: Traxler, Wilkinson, Niemeyer, Motz, King, Gregory, Shedd, Duncan, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris